**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIBEL ESCOBEDO GONZALEZ,<br><br>                                    Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden Core Civic, Otay Mesa, CA, et al.,<br><br>                                    Respondents. | Case No.: 3:26-cv-00299-RBM-DEB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. 1] |

On January 20, 2026, Petitioner Maribel Escobedo Gonzalez ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 (Doc. 1) and a Motion for Temporary Restraining Order ("TRO Motion") (Doc. 2).  Petitioner claims she is being detained in violation of the Fifth Amendment's Due Process Clause.  (Doc. 1 ¶¶ 39–50.)  For the reasons set forth below, the Petition is **GRANTED**.

## I.     BACKGROUND

Petitioner, a Mexican national, was ordered removed from the United States on June 4, 1999, and physically removed on June 8, 1999.  (Doc. 1 ¶ 2; *see* Doc. 1-2 at 5.)  "Petitioner last reentered the U.S. without inspection on June 8, 1999," and has not left the United States since.  (Doc. 1 ¶ 2.)

On or around April 6, 2013, Petitioner was arrested for driving under the influence. (*See* Doc. 1-2 at 5.) On May 14, 2013, Petitioner was released from the Metropolitan Correctional Center to Immigration and Customs Enforcement's ("ICE") custody pursuant to an immigration detainer. (Doc. 1-2 at 6; Doc. 1 ¶ 3.) Petitioner was issued a Notice of Intent/Decision to Reinstate a Prior Order of Removal and she later claimed a fear of returning to Mexico. (*See* Doc. 1-2 at 3, 6; Doc. 1 ¶ 3.) Petitioner was held in Respondents' custody for over a year until she was released pursuant to an Order of Supervision on November 26, 2014. (Doc. 1 ¶ 3; *see* Doc. 1-2 at 8.) On April 11, 2019, an immigration judge granted Petitioner's request for deferral of removal to Mexico under the Convention Against Torture. (Doc. 1 ¶ 3; *see* Doc. 1-2 at 9.)

On December 18, 2025, Petitioner was re-detained while attending a regularly scheduled check-in with ICE. (Doc. 1 ¶ 5; *see* Doc. 5-2 at 3.) Petitioner filed the instant Petition on January 20, 2026. (Doc. 1.) Pursuant to this Court's Order (*see* Doc. 3; *see also* Doc. 6), Respondents filed the Response in Opposition to Habeas Petition and Motion for Temporary Restraining Order ("Response") on January 27, 2026. (Doc. 5.) On February 3, 2026, Petitioner filed a Reply to Respondents' Response in Opposition to Petitioner's Habeas Petition and Motion for Temporary Restraining Order. (Doc. 6.)

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id*. § 2241(c)(3).

## III. DISCUSSION

Petitioner argues that her continued detention and anticipated removal to a third country violate the Fifth Amendment's Due Process Clause. (Doc. 1 ¶¶ 39–50.) Respondents argue that: (1) ICE "may remove Petitioner to a third country that will accept Petitioner's removal" because removal to other countries is "impracticable, inadvisable, or impossible"; (2) "it would be premature to conclude that there is no significant likelihood of removal in the reasonably foreseeable future"; and (3) "Petitioner's concern that she will not receive adequate notice and an opportunity to be heard prior to her third country removal is not borne out by the evidence in this case." (Doc. 5 at 5–6.)

The Court has consistently rejected the same arguments in response to habeas petitions filed by similarly situated petitioners. For example, in *Azzo v. Noem*, the Court held that Respondents: (1) failed to satisfy their burden under *Zadvydas*; and (2) must provide Petitioner with adequate notice and an opportunity to be heard before removing him to a third country. Case No.: 3:25-cv-03122-RBM-BJW, 2025 WL 3535208, at *2 (S.D. Cal. Dec. 10, 2025). As to the *Zadvydas* claim, the Court found the petitioner adequately demonstrated there was "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" because ICE had been unable to deport him or "even identify a third country to deport him to." *Id*. at *3 (citation omitted). The respondents also failed to sufficiently rebut the petitioner's showing under *Zadvydas* because they had "not even identified a third country to which they plan to remove [the petitioner], much less submitted a travel document or provided an estimate for how long it would take this unidentified third country to respond." *Id*. at *4. The Court also rejected the respondents' argument concerning third country removal "[b]ecause [the respondents] actively [sought] to remove [the petitioner] to a third country." *Id*. at *6.

Like in *Azzo*, Petitioner's current detention is no longer presumptively reasonable because she was detained for over a year in 2014 and nearly two months in 2026. (Doc. 1 ¶¶ 3–5.) Petitioner has also met her initial burden under *Zadvyvas* to show good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.

Specifically, Petitioner has established that she was granted deferral of removal from Mexico under CAT and that Respondents have been unable to identify a country that will accept Petitioner for removal in the past 12–13 years. (Doc. 6 at 3.)[1] To rebut this showing, Respondents, as in *Azzo*, claim "ICE has worked expeditiously to effectuate her resettlement in a third country" and that "these efforts are ongoing." (Doc. 5 at 5.)

The Court therefore adopts its reasoning in *Azzo* and applies it here. For those same reasons, Petitioner's continued detention is no longer reasonable or authorized by statute and is therefore unlawful. Because Respondents have yet to identify a possible third country for Petitioner's removal and "'offered little more than generalizations regarding the likelihood that removal will occur,' . . . the Court finds that they have not met their burden to 'respond with evidence sufficient to rebut' Petitioner's showing." *Azzo*, 2025 WL 3535208, at *4 (quoting *Kamyab v. Bondi*, Case No. C25-389RSL, 2025 WL 2917522, at *4 (W.D. Wash. Oct. 14, 2025)); *see also Ndandu v. Noem*, No. 3:25-CV-02939-RBM-MSB, 2026 WL 25848, at *6 (S.D. Cal. Jan. 5, 2026) (finding ICE's "good faith" efforts to secure a travel document, without more, do not render detention reasonable).

Additionally, because Respondents actively seek to remove Petitioner to a third country (*see* Barroga Decl. ¶¶ 12–15), the Court finds Respondents' argument concerning Petitioner's third country removal claim unavailing. The Court also adopts its reasoning in *Azzo* concerning the third country removal claim and reaches the same conclusion: Petitioner must be provided adequate notice and an opportunity to be heard before being removed to a third country. *See Azzo*, 2025 WL 3535208, at *7–8 (adopting reasoning and

---

[1] Relying on the Declaration of Denise E. Barroga, a deportation officer, Respondents suggest that the removal order became final on August 1, 2022, and that Petitioner was released on an Order of Supervision on September 12, 2023. (Doc. 5 at 2; *see* Doc. 5-1 ¶¶ 5–8.) However, these statements contradict Petitioner's I-213 form dated April 11, 2013, the Notice of Intent/Decision to Reinstate Prior Order dated May 14, 2013, and the immigration judge's order issued on April 11, 2019, which are attached as exhibits to the Petition. (*See* Doc. 1-2 at 3–6, 9.) Because of these inconsistencies, and in the absence of evidence supporting these statements, the Court declines to rely on them.

conclusion in *Esmail v. Noem*, Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025)); *see also G.A.A. v. Chestnut*, Case No. 1:25-cv-01102-EPG-HC, 2025 WL 3251316, at *7 (E.D. Cal. Nov. 21, 2025) ("Despite [respondents'] assurances," there is still "a sufficiently imminent risk that Petitioner will be subjected to improper process in relation to any third country removal").

### IV.  CONCLUSION

Based on the foregoing reasons, the Petition (Doc. 1) is **GRANTED**.  Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to her preexisting Order of Supervision.

2. Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. United States Dep't of Homeland Sec.*, Civil Action No. 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025).[2]

3. The TRO Motion (Doc. 2) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

DATE:  February 17, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2] This relief has been granted in similar matters. See *Louangmilith v. Noem*, — F. Supp. 3d —, 2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025); *Kumar v. Wamsley*, CASE NO. C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025).